IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIM RAMIREZ and TRAVIS RAMIREZ, ) | |
| ) | |
| Plaintiffs, ) | Case No. CV07-368-N-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| CITY OF PONDERAY, et al, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court in the above-entitled matter are Defendants' Motion for Summary Judgment (Docket No. 15) and Renewed Motion to Dismiss State Law Claims (Docket No. 26). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Motion to Dismiss State Law Claims**

On April 1, 2008, the Court issued its Memorandum Order, Docket No. 25, directing Plaintiffs to post a $3,000 bond within twenty days of the date of the Memorandum Order or move to waive the bond and supply necessary affidavits to establish the indigency of the Plaintiffs. No bond or motion regarding waiver was filed by Plaintiffs. On April 22, 2008, Defendants renewed their motion based on Plaintiffs failure to file the requisite bond. Plaintiffs failed to file any response to Defendants' renewed motion.

District Courts may establish local rules of procedure that have the force of law. Fed. R. Civ. P. 83(a)(1). Attorneys practicing in a federal district court are charged with knowledge of the local rules the same as they are charged with knowledge of the Fed. R. Civ.

P. Local Rule 7.1 controls when a response must be filed to a motion. Pursuant to D. Idaho L. Civ. R. 7.1(c), the responding party must file its response within twenty-one days after service upon the party of the motion and memorandum by the moving party.[1] The certificate of service indicates counsel for Plaintiffs was served with the motion and related pleadings.

The Local Rules provide that failure to respond to a motion may be deemed consent to the granting of the motion. D. Idaho L. Civ. R. 7.1(f). A motion to dismiss can be granted for failure to comply with local rules. Ghazali v. Moran, 46 F.3d 52 (9th Cir. 1995). The Ninth Circuit has set forth the factors to be weighed in dismissing a case:

> Before dismissing the action, the district court is required to weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

Id. at 53 citing Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986).[2]

In applying these factors and considering the Court granted Plaintiffs 20 days to post a bond or move for a waiver, the motion to dismiss should be granted in this case. Idaho Code § 6-610 precludes a party from filing a complaint against a law enforcement officer unless plaintiff also files a written undertaking and requisite bonds. Specifically, § 6-610 provides that before any civil action may be filed against any law enforcement officer, when such action arises out of, or in the course of the performance of his duty, the proposed plaintiff, as a condition precedent, shall file a written undertaking with at least two sufficient sureties in an amount to be fixed by the court. Plaintiffs have failed to comply with Idaho Code § 6-610 and the state law claims against the Defendants are hereby dismissed.

---

[1] D. Id. L. Civ. R. 7.1(c)(1) provides in part:

The responding party must serve and file a response brief . . . . The responding parties must serve and file with the response brief any affidavits, copies of all photographs, and documentary evidence on which the responding party intends to rely. (Emphasis added.)

[2] The Court acknowledges a motion for summary judgment may not be dismissed for failure to comply with local rules. See Marshall v. Gates, 44 F.3d 722, 725 (9th Cir.1995); Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir.1993).

**Motion for Summary Judgment**

1. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

---

[3] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

2. Factual Background

Plaintiffs Tim Ramirez and Travis Ramirez's Complaint alleges certain state law causes of action for negligence and negligent infliction of emotional distress as well as causes of action for alleged violations of his constitutional rights pursuant to 42 U.S.C. 1983 against Defendants City of Ponderay, Bonner County, City of Ponderay Police Department, Bonner County Sheriff's Office and John Does I -X (collectively referred to as "Defendants"). Specifically, Plaintiffs allege Ponderary Police Officer John Givens and Bonner County Deputy Sheriff Aaron Flynn as the arresting officers, used excessive and unreasonable force during an arrest, resulting in personal injury to the Plaintiffs.

The Plaintiffs did not submit any affidavits regarding the events and elected not to file the store surveillance video tape from the Conoco store after being given leave to file the video within ten (10) days of the Court's Order issued on May 22, 2008. Therefore, the factual background is based primarily on the undisputed facts presented in the affidavits and police reports submitted by the Defendants in support of the motion.

On August 13, 2005, at approximately 5:50 p.m., Ponderay Police Officer John Givens ("Givens") was dispatched to Schweitzer Conoco in Sandpoint, ID in response to a report by Christine Nelson ("Nelson") of a possibly intoxicated driver who nearly hit a pedestrian and was driving a vehicle with the license number 9B 477. Officer Givens requested officer assistance and Bonner County Sheriff's Deputy Aaron Flynn ("Flynn") and

Sandpoint Police Officer Daryl Wheeler ("Wheeler") responded to the request for assistance by Givens.

At the Conoco station, Givens saw a blue Chevy Blazer with the license number 9B 477 parked in front of the Conoco station. A man was seated in the driver's position and he was identified as Timothy Ramirez ("Tim"). When Officer Givens approached the driver, he noticed the strong smell of alcohol and observed the slurred speech and red/bloodshot eyes of Tim. Tim provided his license, registration and insurance information to the officer, but refused to answer who had been driving the vehicle to its location at the Conoco station. Tim admitted he had consumed "a lot" of alcohol.

The eyewitness Nelson confirmed to Officer Givens that Tim was the driver when the vehicle nearly hit the pedestrian. Officer Givens asked Nelson and another witness to complete voluntary witness statements regarding what they had observed. Officer Givens then returned to the Blazer and noticed Tim was no longer in the vehicle and there was a younger male standing near the passenger side. The younger male was identified as Travis Ramirez ("Travis"). Travis indicated to the officer that his father had gone into the Conoco store. Officer Givens entered the store and found Tim sitting at a table. Travis followed Officer Givens into the store.

Deputy Flynn arrived to see Givens and Travis walking into the store. Givens asked Tim to step outside and he refused and denied having driven the car. Givens then told Tim he was under arrest and asked him to stand up and put his hands behind his back. Tim replied, "no I'm not." Officer Givens attempted to grab Tim's arm, but Tim pulled away from the officer. Tim is approximately 70 pounds heavier than Officer Givens.

Travis began yelling to leave his father alone. Deputy Flynn stepped between Travis and Officer Givens. Flynn ordered Travis to step back and Travis complied. Travis continued with verbal outbursts and Flynn again stepped in front of Travis when he tried to approach Officer Givens. Travis pushed the deputy's arm aside and attempted to get past the deputy to Givens. Givens then stepped away from Tim and went to Flynn's aid with his taser. Givens instructed Travis to step back.

Flynn placed Travis in an arm lock and began to lead Travis away, but then Travis struggled to get free and the deputy took Travis to the ground. Travis refused to comply with

the officers' instructions and continued yelling and struggling with the officers who were attempting to place handcuffs on Travis. Givens attempted to stun Travis, but was not able to do so until the third attempt.

While Travis was being taken into custody, Tim got up from the table and screamed "leave my f. . . ing son alone." Givens instructed Tim to "get back," but Tim continued forward. Givens replaced the taser cartridge and told Tim to stand back. Tim continued to verbally threaten the officers. Givens pointed the taser at Tim and told him to get back. Tim continued forward, so Givens activated his taser and shot two darts into Tim's chest with full five second discharges.

Tim grabbed his chest and slumped to the ground. Givens ordered Tim to rollover and place his hands on his side. Tim refused to comply, so Givens tasered him again for a full five seconds.

While Tim was being tasered, Travis began screaming and continued struggling with Deputy Flynn. Flynn withdrew his OC canister and administered a one second spray into Travis' eye area. Travis became compliant and laid on his stomach while Flynn handcuffed him. Flynn then approached Officer Givens and Tim and handcuffed Tim.

Flynn and Cpl. Lunde (who had also just arrived) washed out the eyes of Travis. Officer Wheeler then arrived on the scene and found Flynn and Lunde. Officer Wheeler then approached Officer Givens and Tim. Office Wheeler noted Tim was extremely intoxicated and uncooperative. Medical staff arrived to remove darts from Tim's chest. The EMT's also flushed out Travis' eyes.

Officer Givens took Tim to the patrol car, but Tim refused to pull his feet into the car. Officer Givens threatened to use his taser again and placed the taser gun on Tim's body. Tim pulled his feet into the car and the officer did not administer a taser stun. Because Tim continued to be uncooperative, Officer Givens requested assistance at the jail prior to removing Tim from the patrol car. Once jail staff arrived, Tim was removed from the patrol car. After walking a couple of steps, he collapsed to the ground. Givens asked for medical assistance and EMT's arrived to transport Tim to the hospital.

Tim was charged with driving under the influence ("DUI") and resisting and obstructing an officer. Since Tim was at the hospital, Judge Heise ordered him released on

ORDER - Page 6
08ORDERS\ramirez_dis.WPD

his own recognizance. After a jury trial, Tim was convicted of DUI and resisting and obstructing arrest. The facts submitted by the parties do not indicate whether Travis was issued a citation.

Plaintiffs claim the law enforcement officers use of force against both Tim and Travis was excessive and unreasonable in violation of the Fourth Amendment. The Defendants argue the use of force was not excessive or unreasonable based on the circumstances presented and was not in violation of the Fourth Amendment.

3. Analysis

Since the Court has dismissed the state law claims, the motion for summary judgment will only address the Plaintiffs' remaining § 1983 claims against the individual officers and the municipality.

A.   Is the motion for summary judgment premature?

Plaintiffs make reference in his responsive briefing that "if the Court does not feel as though Mr. Jones' affidavit is inherently sufficient to provide a genuine issue of material fact, then the court should continue this motion and allow the plaintiff to make a more informed response after completion of discovery." Response to Defendants' Motion for Summary Judgment, Docket No. 19, p. 7.

The motion for summary judgment was filed on November 21, 2007. No Rule 56(f) motion was filed by Plaintiff requesting more time to conduct discovery before responding to the motion. Plaintiff's obligations to respond to the motion with evidence are set forth in Fed. R. Civ. P. 56(e)(2):

> Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

After a § 1983 defendant makes a properly supported motion for summary judgment based on qualified immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. Butler v. San Diego District Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004). In such a scenario, the burden of proof is shifted to the non-moving party, the

ORDER - Page 7
08ORDERS\ramirez_dis.WPD

Plaintiff in this case, to produce evidence sufficient to support a jury verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

Plaintiff's statements as contained in his brief, if unsupported by the record, cannot be used to create a material issue of fact. Barnes v. Independent Auto. Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Instead, the "party opposing summary judgment must direct [the court's] attention to specific triable facts." Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003). This requires the non-moving party to go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986)..

The Court will view the facts in a light most favorable to the non-moving party, but it is up to the non-moving party to provide adequate affidavits or other evidence to show a genuine issue of material fact exists. In this case, Plaintiff elected to respond to the motion for summary judgment without seeking time to conduct depositions or submit affidavits from Tim and Travis. Instead, Plaintiffs submitted an affidavit of Mr. Jones, which has since been struck by the Court, but the Court allowed the Plaintiffffs' leave to file the a copy of the actual surveillance video from the Conoco store. See Docket No. 27. As of June 15, 2008, no surveillance video was filed with the Court.

Moreover, at no time since the motion was filed have Plaintiffs sought to file a supplemental response based on discovery that was ordered to be completed by June 2, 2008. It is not the Court's duty to order certain discovery in response to a motion for summary judgment; it is Plaintiffs' obligation to respond to the motion in accordance with the applicable rules of procedure. The Court finds any failure to submit additional evidence for the Court to consider by the close of discovery on June 2, 2008 is the fault of the Plaintiffs, not the Court's. The motion for summary judgment is properly before the Court and will be decided on the record before the Court at this time.

Plaintiffs' counsel is an experienced attorney who knows how to file a Rule 56(f) motion or a motion for leave to file a supplemental brief. To the extent that the statement in Plaintiffs' briefing could be deemed a Rule 56(f) motion, the motion is denied as good cause has not been shown for the granting of such a motion.

B. § 1983 claims against Officer Givens, Deputy Flynn, Cpl. Lunde and Officer Wheeler

In reading the Plaintiffs' complaint carefully, it does not appear Plaintiffs have made claims against Officer Wheeler or Cpl. Lunde for alleged violations of their § 1983 rights as these law enforcement officers arrived after the use of the tasers and OC had already been used by Officer Givens and Deputy Flynn. Accordingly, any § 1983 claims against Cpl. Lunde or Officer Wheeler are hereby dismissed. As to Count 1 against Officer Givens and Deputy Flynn, the Court will evaluate whether the officers are entitled to qualified immunity for their actions.

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that Officer Givens and Deputy Flynn were acting under color of state law when they responded to the dispatch call. Therefore, the question becomes, did Officer Givens and Deputy Flynn's actions deprive Tim and/or Travis Ramirez of a right, privilege or immunity secured by the Constitution or federal law.

Defendants Givens and Flynn have raised the defense of qualified immunity. Police officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 200, 202 (2001). On the other hand, this privilege allows redress where clear wrongs are caused by state actors. Id. "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01.

"As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, the Court will analyze the specific constitutional rights Plaintiffs allege were violated by Officer Givens and Deputy Flynn.

Plaintiffs claim Officer Givens and Deputy Flynn violated their Fourth Amendment right to be free from the use excessive and unreasonable force. See Complaint, Docket No. 6, p.3. In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court held the proper test for an excessive force claim related to a traffic arrest is whether the seizure of the person was objectively reasonable under the Fourth Amendment and not the standard for a substantive due process claim under the Fourteenth Amendment. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. Accordingly, this Court will apply the "objectively reasonable" test to the undisputed facts in this case. In Gregory v. County of

Maui, ___ F.3d ___, 2008 WL 1869007 (9th Cir. 2008), the Ninth Circuit recently summarized the analysis for a excessive force claim:

> To determine whether the force used by the officers was excessive under the Fourth Amendment, we must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). In this analysis, we must consider the following factors: (1) the severity of the crime at issue; (2) whether [Plaintiff] Gregory posed an immediate threat to the safety of the officers or others; and (3) whether [Plaintiff] Gregory actively resisted arrest. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921 (9th Cir.2001).

The question for this Court is did the officers use excessive and unreasonable force in violation of the Fourth Amendment in attempting to arrest Tim for DUI? Officer Givens did not immediately engage the use of his taser to subdue Tim. Instead, the undisputed facts establish that Tim was very intoxicated, was agitated by the officers restraining Travis from interfering, using threatening language towards the officers, and would not comply with the officers' orders. Only after Tim refused to comply and continued to threaten physical harm to Officer Givens based on the treatment of Travis, did Officer Givens find the use of his taser was necessary to control Tim.

"Police officers . . . are not required to use the least intrusive degree of force possible . . . [T]he inquiry is whether the force that was used to effect a particular seizure was reasonable." Forrester v. City of San Diego, 25 F.3d 804, 807-08 (9th Cir. 1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." Graham at 396-97.

Based on the undisputed facts in this particular case, the Court finds the crime at issue was fairly severe as Tim had been driving while intoxicated and nearly hit a pedestrian. Tim posed an immediate threat to the safety of the officers when he jumped on the table, yelled at the officers, threatened physical harm to the officers, was in an agitated and intoxicated state, and he was resisting arrest. The physical size and strength of Tim prevented the

officers from arresting him using just physical force. The events occurred very rapidly and Officer Givens made a split second decision to use his taser after Tim failed to comply with his orders. For all of these reasons, the Court finds the use of the taser on Tim was objectively reasonable in light of the volatile situation facing the two officers.

In this case, the undisputed facts also establish the use of force escalated only after Travis continued to obstruct the officers and Tim failed to comply with the Officer Givens' orders. Travis also refused to comply and continued to struggle with Deputy Flynn while the officers were trying to handcuff him on the ground. The use of the taser to subdue Travis was also objectively reasonable as the officer's oral commands were not being followed by Travis and he continued to try to interfere with the arrest of his father.

As to Deputy Flynn's use of the OC spray for one second on Travis, the Court reaches the same conclusion. Based on the situation presented of Travis and Tim refusing to comply with the officers and Travis' attempts to intervene on his father's behalf, Deputy Flynn's use of the OC spray in order to subdue Travis and gain compliance was objectively reasonable and not a violation of Plaintiffs' constitutional rights.

Under these circumstances, the physical force of putting the Plaintiffs to the ground, the use of the taser gun and OC spray by Officer Givens and Deputy Flynn were objectively reasonable for the situation presented for the safety of the officers and others in the store. The Court finds based on the undisputed facts no constitutional violation of excessive force or unreasonable occurred. Accordingly, the qualified immunity defense analysis ends and this § 1983 count must be dismissed against the Officer Givens and Deputy Flynn regarding the alleged excessive or unreasonable use of force in violation of the Fourth Amendment.

C. <u>§ 1983 Claim against City of Ponderay, Bonner County, City of Ponderay Police Department and Bonner County Sheriff's Department.</u>

The Complaint also names as defendants the city, the police dept, the county and the county sheriff's department. To the extent Count 1 is claim against any of these municipalities, the § 1983 claims fail.

To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

>  (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Furthermore, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

In this case, the Court has determined that no violation of a constitutional right occurred by either Officer Givens or Deputy Flynn, therefore, the claims against the municipalities must also be dismissed as a matter of law. Moreover, the Court finds Plaintiffs have failed to carry their burden to establish via evidence that the municipalities had a policy or custom which was the moving force behind the alleged constitutional violations. A plaintiff is required to provide evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983. Nadell v. Las Vegas Metropolitan Police Dept., 268 F.3d 924 929 (9th Cir. 2001). A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir.1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir.1989).

Here, Plaintiffs arguably allege in their Complaint that the police department and sheriff's department failed to train or supervise its officers, but has produced no specific evidence of a training or supervision policy that led to a constitutional violation in this case. Nor have Plaintiffs provided evidence that the actual training received created a widespread practice or repeated constitutional violations for which errant officers were not disciplined. In fact, Defendants have provided evidence that the use of the taser and OC were consistent

with department protocol.  Because Plaintiffs have not carried their burden, the claims against all the municipalities must be dismissed.

## Order

Being fully advised in the premises, the Court hereby orders that:

1) Defendants' Renewed Motion to Dismiss State Law Claims (Docket No. 26) is GRANTED and all state law claims against the Defendants are hereby dismissed.

2) Defendants' Motion for Summary Judgment (Docket No. 15) is GRANTED as to the § 1983 claims.  Accordingly, the matter is dismissed in its entirety.

DATED: **June 16, 2008**

Honorable Edward J. Lodge
U. S. District Judge